**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: <br><br> CURTIS PARKER, <br><br> Debtor. <br><br> CURTIS PARKER, <br><br> Movant, <br><br> v. <br><br> 2017-1 IH Borrower, LP <br><br> Respondent. | CIVIL ACTION FILE NO. 25-61216-BEM <br><br> Chapter 7 <br><br> Contested Matter |

**RESPONSE TO MOVANT'S MOTIONS & MOTION TO ENFORCE SETTLEMENT**

COMES NOW 2017-1 IH Borrower, LP (hereinafter "Respondent"), by and through its undersigned counsel, and herein files its Responses to Debtor's two pending motions before this Court [Doc. Nos. 35 and 36] (collectively, "Motion"); Respondent herein further joins Movant's request for this Court to enforce the binding settlement agreement between the parties, respectfully showing this honorable Court as follows:

INTRODUCTION

In filing the instant bankruptcy petition, Debtor willfully failed to disclose its tenant relationship with Respondent, including failing to list Respondent as a creditor and affirmatively disclaiming the existence of any lease under oath. *See* Doc. 1, Schedule G, p. 37; *see* Doc. 1, *generally*. As discussed further below, Debtor however failed to disclose in the Petition the income derived from the longstanding and high-volume short-term rental business operated out of the non-disclosed leased real property.

The Motion conspicuously is supported by great sound and fury yet notably lacking in legal authority or citations, as well as being internally inconsistent. Respondent has fully performed upon the settlement agreement between the parties, which even Debtor concedes within the Motion. Additionally, Debtor admits within the Motion his prospective intention to not perform under the settlement agreement, requiring this Court's involvement under penalty of contempt.

Finally, as discussed below, Debtor has elected to solely use the bankruptcy process as a sword in trying to avoid Respondent's enforceable contract for leased real property while attempting to obtain an unsubstantiated monetary windfall despite Respondent's admitted post-petition financial obligations to Respondent; Debtor's Motion is simply a continuation of his abuse of the bankruptcy process – his admitted use of "litigation leverage" as to the Motion against Respondent - in Debtor's continued prosecution of the Motion. In addition to the reasons stated below, this Court should not countenance Debtor's admitted ongoing willful abuse of the bankruptcy process.

PROCEDURAL BACKGROUND & MATERIAL FACTS

Debtor filed its Petition on September 29, 2025; within the Petition, Debtor failed to identify the unexpired lease for certain real property known as 1149 Autumn Glen Way, Dacula, Georgia 30019 (the "Property") or identify Respondent as a creditor. *See generally* Petition, Doc. 1. Debtor identified his sole source of income within the Petition as monthly food stamps, identifying no other monthly income stream. Id., Schedule I, p. 39. Notwithstanding Debtor's failure to identify Respondent and the lease contract for the Property, Debtor conceded an ongoing financial obligation in maintaining the Property, including $2,600 per month as rent and $350.00 per month as utilities. Id., Schedule J, pp. 41-42. To date, Debtor continues to identify

the Property as his residence. *See* generally Docket, Debtor identifying Property as his address; *see also* Motion (Debtor identifying Property as his address).

Pursuant to the terms of the lease for the Property, Debtor was required to provide "any notice" to Respondent in writing by hand, first class U.S. mail, or express/overnight delivery. *See* Doc. 9-1, p. 7, Sec. 9. Similarly, the lease for the Property could not be "amend[ed] or modifi[ed]… unless written and executed by [Respondent] and [Debtor].: Id., p. 22, Sec. 55. Debtor failed to provide Respondent proper notice, as contemplated within the lease for the Property, of the commencement of the bankruptcy proceeding. *See generally* Doc. 21-23. Respondent only was notified of this Action on October 22, 2025, when Respondent was alerted of this action after Debtor contacted undersigned counsel.

Immediately thereafter, on October 23, 2025, Respondent filed its motion for relief from the automatic stay, identifying Debtor's delinquent then-total of $5,508.29, inclusive of Debtor's post-petition failure to pay October rent of $2408 per month, plus utilities as incurred and fees under the provisions of the lease for the Property. Doc. 9, Sec. 4-5. In light of Debtor's failure to assume, reject, or cure the monetary default as to the lease for the Property, this Court entered an order granting the relief sought by Respondent on December 9, 2025. Doc. 13. Debtor admittedly continues to occupy the Property and intends to do so through at least January 30, 2026, with post-petition rent continuing to accrue at a rate of $2408 per month, plus utilities as incurred and fees under the provisions of the lease for the Property. *See generally* Doc. 36; Doc. 9.

Prior to the application of the settlement amount agreed upon between the parties, as of January 1, 2026, Debtor was obligated (prior to any contemplated discharge) to Respondent in the sum total of $13,769.27, with $2,787.38 being pre-petition obligations and $10,981.89 being

- 3 -

post-petition obligations. *See* January 1, 2026, ledger of sums owing by Debtor to Respondent as to the Property, attached hereto as **Exhibit A**.

Subsequent to the order granting relief from the automatic stay as to Respondent and the Property, Debtor on December 9, 2025, amended its prior motions for sanctions as to purported violations of the automatic stay to be directed against Respondent. *See* Doc. 21-23. Notably, Debtor identified within two portions of the Motion purported correspondence from Respondent, wherein Respondent attempted to obtain information to address and rebut ongoing Homeowner's Association fines being assessed Respondent due to purported activities by Debtor on the Property, namely Debtor operating an income-generating short-term rental business from the Property. *See* Doc. 22-23; *see also* Doc. 17, Ex. A, G.

Concerningly, and in an unquestionable failure of candor by Debtor to this Court,[1] Debtor represented to this Court that the purported HOA violations of short-term renting the Property solely date from pre-petition activities in July. *See* Doc. 23, p. 2, ¶ 8. However, Debtor subsequently admitted to Respondent having maintained an ongoing and active short-term rental business at the Property through December 30, 2025. *See* Debtor correspondence, dated December 31, 2025, attached hereto as **Exhibit B**. Additional investigation by Respondent confirmed Debtor, in fact, maintained a very-active short-term rental business at the Property for at least nine months via at a minimum the AirBnB platform, obtaining over 41 reviews from short-term paying guests on AirBnB of the Property during that timeframe. *See* AirBnB Listing of the Property, dated December 22, 2025, attached hereto as **Exhibit C**. Debtor expressly

---

[1] Pro se litigants "owe the same duty of candor to the court as imposed on any other litigant." *Redmon v. Lake Cnty. Sheriff's Office*, 414 F. App'x 221, 225 (11th Cir. 2011) (holding district court did not abuse its discretion by dismissing complaint as sanction for prisoner's failure to disclose previously filed lawsuit in response to form complaint requesting such disclosure); see also *Daker v. Head*, No. 19-13101, 2022 WL 2903410, at *4 (11th Cir. July 22, 2022) (per curiam) (holding that Plaintiff's "concealment of funds and history of misleading courts and pursuing vexatious litigation tactics was sufficient for the court to find bad faith").

concedes that this income-generating business was in existence prior to the October 31, 2025, Section 341 meeting. *See* Doc. 35, ¶ 2. Again, by contrast, Debtor identified no such income month-over-month to the Trustee or this Court within the Petition and failed to amend the Petition to disclose this reoccurring material source of income during the pendency of this bankruptcy proceeding. *See* Doc. 1; *see generally* Docket (no amended petition or amended schedules disclosing income).

Despite Debtor's patent attempts to use the bankruptcy process as a sword, and not a shield, in concealing income from creditors and this Court, Respondent attempted settlement discussions with Respondent to minimize ongoing costs and resolve the claims with finality. Somewhat ironically, after counsel for Respondent attempted to first initiate settlement discussions via phone, only then did Debtor elect to correspond in writing with Respondent, as required under the terms of the lease for the Property, with Debtor stating that written correspondence "ensures clarity and avoids any misunderstanding." *See* Debtor correspondence, dated December 26, 2025, attached hereto as **Exhibit D**. Within the same correspondence, Debtor threatened to present consumer protection claims to various federal authorities, among others, against Respondent in the event the parties could not reach a settlement. Id.[2]

In light of the general nature of pro se pleadings, as well as some of those same common defects existing in Debtor's Motion, on December 26, 2025, and again on December 27, 2025, counsel for Respondent requested specified asserted automatic stay violations and associated dates from Debtor to facilitate settlement discussions; on December 29, 2025, Debtor responded with an itemized list of purported automatic stay violations. *See* December 29, 2025, email chain, with attachment from Debtor, attached hereto as **Composite Exhibit E**.

---

[2] Debtor's patterns of threats resumed and accelerated immediately prior to Debtor filing this Motion. *See* Composite Exhibit J, below.

- 5 -

Subsequent to undersigned counsel conferring with his client, on December 29, 2025, Respondent presented a settlement offer to Debtor as restated fully herein:

- The parties shall file a joint notice of dismissal upon an email accepting the instant terms with the bankruptcy court. *See attached to be filed upon acceptance via email, which will be filed by my office.*

- Within seven days of an email accepting the instant terms, Parker shall dismiss with prejudice the pending claims against 2017-1 IH Borrower LP as to any asserted violations of the bankruptcy automatic stay. *See attached, as drafted for your convenience.*
    - In entering this settlement, Parker expressly stipulates that this settlement encompasses all purported violations of the bankruptcy automatic stay by 2017-1 IH Borrower LP, its employees, and its agents

- 2017-1 IH Borrower LP shall account and remit $7,000.00 to Parker and provide evidence of the same to Parker within ten business days of acceptance.

- Parker expressly stipulates that he shall vacate the subject Premises (known as 1149 Autumn Glen Way, Dacula, GA 30019) on/before January 30, 2026, and that the Premises shall be abandoned as property of the bankruptcy estate upon discharge; this settlement agreement does not constitute a ratification or novation of the lease agreement for the subject Premises.
    - The security deposit for the subject Premises shall be treated in accordance with Georgia law subsequent to Parker vacating the Premises. See O.C.G.A. 44-7-30 – 44-7-37.

- Each party shall bear its own attorneys' fees in this action; to the extent any party may incur attorneys' fees in enforcing this settlement, the prevailing party is entitled to its costs and attorneys' fees in enforcing this settlement.

**Time is of the essence in this settlement offer** – should you fail to accept the foregoing terms via email by 12:00 p.m. EST on 12/30/2025, said offer shall automatically expire by its terms.

*See* December 29, 2025, Respondent Email and Exhibits to Debtor, attached hereto as **Composite Exhibit F**.

On December 29, 2025, Debtor unconditionally accepted the terms of the foregoing offer from Respondent to fully settle all purported violations of the bankruptcy automatic stay by Respondent, its employees, and its agents. *See* December 29, 2025, Debtor Email to Respondent, attached hereto as **Exhibit G**.

The terms of the settlement required Respondent to "***account and remit*** $7,000.00 to Parker and provide evidence of the same to Parker within ten business days of acceptance." Id. (*emphasis added*). In contravention to the representations made by Debtor in the Motion, Respondent made no warranties or guarantees of Debtor's ongoing ability to occupy or operate an income-producing short-term rental operation in the Property within the Settlement. *See above; see* Section III, *below*.

Due to Debtor's breach of the terms of the lease for the Property in operating a short-term rental business from the Property – as subsequently admitted by Debtor in writing on December 31, 2025 - Respondent provided Debtor a default and termination of the lease for the Property. *See* Letter, "Termination of Lease and Demand for Possession of [the Property]", dated December 29, 2025, attached hereto as **Exhibit H**. Counsel for Respondent stipulates and

represents to this Court that no dispossessory proceeding has been filed as to the Property to-date since the automatic stay was lifted by this Court on December 9, 2025.

On December 29, 2025, counsel for Respondent, pursuant to the terms of the settlement, filed the joint notice of settlement with this Court as contemplated therein. *See* Doc. 30. On January 6, 2026, or one day beyond the timeline contemplated within the settlement agreement, Debtor filed his request to dismiss the claims against Respondent as to any asserted automatic stay violations with prejudice, which was made an order by this Court on January 9, 2026. *See* Doc. 32, Doc. 33.

On January 9, 2026, counsel for Respondent provided proof to Debtor of the accounting of $7,000.00 to Parker, as evidenced by the remittance of the credited ledger obligations as to the Property. *See* January 9, 2026, Email with Ledger Exhibit, attached hereto as **Exhibit I**. Subsequent to the application of the $7,000.00 sum, Debtor is obligated (prior to any discharge) to Respondent in the present sum total of $6,884.27, with $2,787.38 being pre-petition obligations and $4,096.89 as post-petition obligations. Id.

Upon Respondent fully performing its duties and obligations under the terms of the settlement agreement between the parties, Debtor elected to make unprofessional threats and acted in contravention to the settlement agreement, requiring Respondent to incur attorneys' fees and costs in enforcing and defending the settlement agreement. *See* Emails from Debtor, On and After January 10, 2026, attached hereto as **Composite Exhibit J** (Debtor labels Respondent performance as 'treachery', with Debtor threatening to report to the FTC and local media if Respondent fails to provide additional sums to Debtor; Debtor threatening a bar complaint against counsel for Respondent if Respondent failed to provide additional sums to Debtor).

On January 10, 2026, counsel for Respondent addressed each point raised by Debtor in the foregoing correspondence, particularly identifying the baselessness of each of Debtor's assertions. *See* January 10, 2026, Respondent email to Debtor, attached hereto as **Composite Exhibit K**. Counsel for Respondent unequivocally stressed that, to the extent Debtor frivolously moved forward with the threatened action, counsel expressed Respondent's intention to seek recovery of the incurred attorneys' fees in enforcing and defending the settlement agreement. Id.

Subsequent to Debtor filing the instant Motion, Respondent contacted Debtor to confirm instructions as to how to utilize a lockbox to be delivered to the Property to permit Debtor to return possession of the Property on January 30, 2026, as contemplated within the settlement agreement; in response, Debtor threatened to not vacate on January 30, 2026, as agreed within the settlement agreement, among other items. *See* January 15, 2026, email thread, attached hereto as **Composite Exhibit L**.

As stated more fully below, Respondent has fully performed its duties within the settlement agreement. By way of Debtor's threats and actions, Debtor is refusing to abide by the terms of the settlement agreement; Respondent resultingly requests this Court enforce the settlement agreement as to Debtor's performance thereunder, as well as award Respondent its incurred attorneys' fees and costs in enforcing the settlement agreement between the parties.

ARGUMENT AND CITATION OF AUTHORITY

While pro se parties are afforded some leeway in federal court, with their pleadings to be "liberally construed" and "held to a less stringent standard" than attorneys, a pro se party expressly has "no license to harass others and overload the court dockets with meritless or abusive litigation." *In re Strickland*, 179 B.R. 979, 980 (Bankr. N.D. Ga. 1995).

Debtor's conduct and actions against Respondent is precisely the conduct contemplated within *Strickland* and which this Court should swiftly corral – and compel Debtor to adhere to the settlement agreement in light of Debtor's many statements of his prospective intent to not comply with the settlement agreement. Despite Debtor filing twenty-nine pages in support of its Motion, Debtor points to zero cited authorities in support of its substantive legal arguments relating to the settlement agreement, including as to the purported breach. *See generally*, Motion.

The only authority – legal or non-legal – cited by Debtor in support of the Motion is the 1994 U.S. Supreme Court case *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994). However, *Kokkonen* is cited by Debtor for a general premise that is not substantiated by the holding – *Kokkonen* identifies that enforcement of a settlement agreement is not a continuation or renewal of a dismissed claim, and resultingly enforcement requires an independent basis for jurisdiction with federal courts. Id. at 378. Instead of Debtor's broad proffer of *Kokkonen* as sweeping authority for this Court over the settlement agreement, *Kokkonen* instead highlights limits a federal court has over settlement agreements, particularly when a dismissal with prejudice of claims occurred, as is the case here. Id.

Debtor's arguments within the Motion are generally four-fold – (1) that Respondent, in stating a potential good-faith civil action against Debtor was time-sensitive within the context of settlement discussions was 'coercive', as set forth in Doc. 35, pp. 1-2;[3] (2) that Respondent breached the settlement by failing to send Debtor a check for $7,000.00 despite the plain language of the settlement agreement, as outlined in Doc. 35, p. 2; (3) that Respondent somehow 'intimidated and misrepresented' Debtor in citing authorities in support of Respondent's position

---

[3] The irony clearly is lost here on Debtor as to Debtor's multiple threats to take adverse action if not settled in favor of Debtor, including making various consumer complaints and reporting Respondent's counsel to the State Bar, which Debtor admittedly has already done. *See* Composite Exhibit J, above.

- 10 -

of full performance under the settlement agreement and Debtor's conduct being in breach thereof, as set forth in Doc. 35, p.3 ; and (4) that somehow by Debtor expressly stipulating to vacate the Property on/before January 30, 2026, that *Respondent made* a "clear grant of continued possession" of the Property to Debtor, as set forth in Doc. 36, p. 2. Because of the foregoing asserted rights, Debtor asserts incompatibly that the settlement agreement must be enforced yet also vacated (see, e.g., Doc 35, p.4) under various naked legal theories which fail, as addressed more fully below.

Additionally, Debtor in a conclusory manner asserts that somehow, despite Debtor himself expressly stipulating to vacate the Property on/before January 30, 2026, that Respondent somehow promised or made a "grant of continued possession" is farcical and directly rebutted by Debtor's own pleadings and arguments. Debtor's expressed intention to breach his future performance of the settlement agreement requires this Court's involvement to compel compliance by Debtor.

I. **Respondent has Fully Performed on The Settlement Agreement by Its Terms, and Debtor Has Threatened Future Non-Compliance of the Settlement Agreement**

As evidenced by the plain language of the settlement agreement, Respondent has fully performed thereunder. Resultingly, this Court should enforce the settlement agreement, as requested by Debtor, requiring Debtor to comply with the terms of the settlement agreement.

Particularly, within the settlement terms it was agreed that Respondent would "account and remit" a certain amount. An "accounting" is defined as a "statement by which someone seeks to describe or explain an event", including a "detailed statement of the debits and credits between parties to a contract." ACCOUNT, Black's Law Dictionary (12th ed. 2024).

As expressly conceded by Debtor, and as evidenced herein, Respondent fully accomplished those terms via crediting the ledger, as provided timely to Debtor, as to post-petition sums accruing

- 11 -

due to Debtor's admitted continued occupancy and use of the Property. Respondent similarly timely remitted – to "pardon or forgive" or "transmit," as defined within Black's Law[4]– the agreed-upon sum via the updated ledger statement as acknowledged by Debtor in writing. There unequivocally is no ambiguity here, and Debtor points to zero cited authority to support his naked assertion that Respondent somehow breached the settlement agreement despite Respondent's full performance.

Moreover, the absurdity of Debtor's position within the Motion of Respondent being in breach while also acknowledging Respondent crediting a $7,000.00 sum on Debtor's post-petition obligations is emphasized by hypothetically illustrating Debtor prevailing on his argument that he somehow was entitled to receipt of a sum of physical money - which was not set forth within the settlement agreement and highlighted by the settlement agreement not stating a means of purported payment (e.g. wire transfer, ACH, certified check, etc.). Hypothetically, if the Court somehow found Debtor's naked assertions as sustained, Respondent would be compelled to reverse the credit to Debtor's post-petition account and deliver a check to the clerk of this Court. However, Debtor does not contest and in fact concedes his post-petition obligations accruing to Respondent during Debtor's continued occupancy and use of the Property from October 2025 through at least January 30, 2026; resultingly, Respondent would be entitled to make a claim and seek recovery of the same physical check from the clerk of this Court to satisfy a portion of Debtor's post-petition obligations to Respondent. *See also In re Isaac*, Adversary No. 06–09004, 2006 WL 6589899 (Bankr. N.D. Ga. Mar. 7, 2006) (Bankruptcy court expressly holding that post-petition rent within a Chapter 7 proceeding is not affected by a discharge).

---

[4] REMIT, Black's Law Dictionary (12th ed. 2024).

After considering the foregoing, Debtor's goal here is unmistakable – Debtor desires to use the bankruptcy process as a sword in obtaining additional liquid sums while simultaneously avoiding both (1) his ongoing post-petition financial obligations to Respondent and (2) Debtor having to account to the Trustee and this Court of the over nine months of short-term rental income obtained in using the Property in express violation of the lease and HOA rules.

Not only has Debtor failed to bring forth any facts or authority to sustain his assertion that the settlement agreement was breached by Respondent, but Debtor unequivocally intends to continue to abuse the bankruptcy process and protections while shirking the responsibilities placed upon a debtor, let alone a pro se debtor, in order to obtain a discharge of pre-petition debt and also attempt to avoid post-petition debt by seeking this relief from this Court. For these reasons alone, this Court should summarily deny the Motion.

## II. No "Threat" or "Coercion" Occurred in Respondent Sharing the Time Sensitive Nature of Settlement Discussions.

Within the Motion Debtor nakedly asserts that Respondent sharing a timeline germane to the ongoing settlement discussions was 'coercive' or 'threatening', namely a potential basis to object to discharge of Debtor under 11 U.S.C. § 727.

Setting aside the fact that the Georgia Rules of Professional Conduct do not bar a party from identifying additional meritorious civil claims to be brought against a party if a settlement is not consummated,[5] Debtor expressly conceded and acknowledged the potential basis of objection to discharge – one which Debtor subsequently acknowledged having occurred continuously since prior to the Section 341 meeting - without Respondent ever identifying what the underlying basis

---

[5] *See* GEORGIA R. PROF. CONDUCT, 3.4(h) (prohibiting threatening criminal charges solely to obtain an advantage in a civil matter).

- 13 -

to object pursuant to 11 U.S.C. § 727 might have been. *See* Composite Exhibit E, Email from Debtor dated December 26, 2025, 3:45p.m. Clearly Debtor was well-aware of the shell game being played to avoid disclosure of financial gains to this Court and the Trustee prior to any correspondence from Respondent.

Moreover, there was a period of numerous emails exchanging several settlement offers between the parties over the course of three days, culminating in the binding settlement agreement, which did not reference the 'coercive' or 'threatening' communication. Conspicuously, however, Debtor is unequivocally culpable of the conduct Debtor complains of in the Motion, having attempted to manipulate and pressure Respondent to acquiesce prior to filing the Motion to his unsubstantiated demands, namely demanding a physical check from Respondent or else threatening to (1) bring claims against Respondent with this Court; (2) refer Respondent to the Federal Trade Commission for the purported breach; (3) bring the foregoing to media attention; and (4) file a bar complaint with the State Bar of Georgia against counsel for Respondent. *See* Composite Exhibit J.

To the remote extent that this Court could somehow find any defect in Respondent's good faith settlement discussions with Debtor, Debtor unquestionably fails to come before this Court with any degree of clean hands;[6] for this additional reason, Debtor's Motion must be denied to the relief sought, with this Court compelling enforcement of the settlement agreement as to Debtor.

### III. The Plain Language of the Settlement Agreement Evidences No Granted 'Right' of 'Continued Possession' of the Property.

Finally, Debtor without basis in fact – as unsupported by the plain language of the Settlement Agreement – or in law asserts that Debtor was granted and conveyed a "clear grant of continued

---

[6] *See Gaudiosi v. Mellon*, 269 F.2d 873, 881-82 (3d Cir. 1959)(no principle is better settled than the maxim that he who comes into equity must come with "clean hands" and keep them clean throughout the course of the litigation, and that if he violates this rule, he must be denied all relief whatever may have been the merits of his claim.)

possession of the Property through January 30" within the Motion. *See* Doc 36, p. 2-3. The plain language of the settlement agreement wholly vitiates Debtor's naked assertion.

Debtor conspicuously points to no language of representation or warranty by Respondent as to continued possession of the Property – instead, Debtor simply cites an express stipulation <u>*by Debtor*</u> in support of his assertion of a continued right to possess the Property through January 30, 2026. Particularly, Debtor quotes a select and incomplete portion of the germane settlement sentence at issue – the entire provision from the settlement agreement is restated herein:

- Parker expressly stipulates that he shall vacate the subject Premises (known as 1149 Autumn Glen Way, Dacula, GA 30019) on/before January 30, 2026, and that the Premises shall be abandoned as property of the bankruptcy estate upon discharge; this settlement agreement does not constitute a ratification or novation of the lease agreement for the subject Premises.

A cursory examination of the foregoing reflects (1) no representation or warranty by Respondent and, in fact, (2) an express acknowledgment by Debtor that the settlement <u>*does not*</u> ratify or novate the lease for the Property. Similar to Debtor's other cursory ChatGPT arguments above as to the sole legal authority cited, the applicable settlement provision not only fails to contain any representation by Respondent therein, but in fact it affirmatively disclaims any argument that the settlement agreement somehow would be construed to ratify or novate the lease for the Premises. For this additional reason, Debtor's Motion must be denied to the relief sought, with this Court compelling enforcement of the settlement agreement as to Debtor.

CONCLUSION

For the foregoing reasons, Debtor's Motion must substantively be denied. However, due to Debtor's numerous representations of his intent to not comply prospectively with his settlement obligations, this Court should enforce the settlement agreement, as requested by Debtor, to ensure Debtor complies with his settlement obligations.

Additionally, because the settlement agreement so allows, Respondent as prevailing party is entitled to recover its suffered attorneys' fees and costs in defending and enforcing the settlement agreement from January 10, 2026 prospectively. Counsel for Respondent intends to provide testimony before this Court as to the incurred attorneys' fees and costs expended in this matter on January 20, 2026.

Respectfully submitted, this 16th day of January, 2026.

| | |
|---|---|
| THE TOTTEN FIRM, LLC<br>5579 Chamblee-Dunwoody Rd<br>Ste B-136<br>Atlanta, GA 30338<br>(404) 692-4342 (Telephone)<br>mft@tottenfirm.com (E-mail) | _/s/ Matthew F. Totten_____<br>Matthew F. Totten<br>Georgia Bar No. 798589<br>Attorney for Respondent |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CURTIS PARKER, | ) |
| | ) CAFN |
| Debtor. | ) 25-61216-bem |
| ------------------------------------ | ) |
| | ) CHAPTER 7 |
| CURTIS PARKER, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) CONTESTED MATTER |
| | ) |

2017-1 IH Borrower, LP
Respondent.

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the **RESPONSE TO MOVANT'S MOTIONS & MOTION TO ENFORCE SETTLEMENT** using the CM/ECF system, which will automatically send email notification of such filing to all interested parties. Additionally, I have served the same by First Class U.S. Mail and e-mail upon the below:

Curtis Parker, *Pro se*
1149 Autumn Glen Way
Dacula, GA 30019
curtis.parker1776@gmail.com

This 16th day of January, 2026.

| | |
|---|---|
| THE TOTTEN FIRM, LLC | /s/ Matthew F. Totten____ |
| 5579 Chamblee-Dunwoody Rd | Matthew F. Totten |
| Ste B-136 | Georgia Bar No. 798589 |
| Atlanta, GA 30338 | Attorney for Respondent |
| (404) 692-4342 (Telephone) | |
| mft@tottenfirm.com (E-mail) | |

- 17 -